North American Acceptance Corporation, Plaintiff-Appellant, v. Northern Illinois Corporation, Defendant-Appellee.

Gen. No. 10,578.

Opinion filed May 2, 1952. Rehearing denied June 11, 1952. Released for publication June 12, 1952.

Joslyn, Parker & Kell, of Woodstock, for appellant; Charles S. Parker, and V. E. Kell, both of Woodstock, of counsel.

Carbary & Carbary, and Paul M. Hamilton, all of Elgin, for appellee; George D. Carbary, Warren Carbary, and Paul M. Hamilton, all of Elgin, of counsel.

Mr. Presiding Justice Dove delivered the opinion of the court.

Northern Illinois Corporation, a financing organization, whose chief place of business was in De Kalb, Illinois, and McHenry County Motor Sales, Inc., a corporation, which was engaged in buying and selling automobiles at retail and having its principal place of business in Woodstock, Illinois, executed, on November 8, 1948, a Statement of Trust Receipt Financing, as provided by section 13 of the Uniform Trust Receipts Act. This instrument was thereafter, on November 15, 1948, filed in the office of the Secretary of State as provided by law. (Ill. Rev. St. 1947, chap. 121½, par. 178) [Jones Ill. Stats. Ann. 135.17 (13).] Hereafter, in this opinion Northern Illinois Corporation will be referred to as Entruster and McHenry County Motor Sales, Inc., will be referred to as Trustee, so designated in said Statement.

On November 16, 1948, the Trustee purchased a new Kaiser, four-door automobile from Allied Motors, Inc., a Kaiser-Frazer distributor in Rockford, and Richard V. Kausal, acting for the Trustee and employed by it as a salesman, drove the car from Rockford to Woodstock, and upon its arrival in Woodstock, it was placed in the showroom at the Trustee's place of business. At the time Richard V. Kausal obtained the car from Allied Motors, Inc., in Rockford, no money was paid Allied Motors, Inc., but Richard understood it was to be financed on a floor-plan arrangement with the Entruster. The Entruster, on the same day, paid for it by honoring a draft drawn upon it by Allied Motors, Inc., for $2,084.65.

On November 18, 1948, the Trustee, as dealer, executed and delivered to the Entruster, a demand promissory note for $2,084.65, a bill of sale covering the said Kaiser automobile, and a trust receipt. By this trust receipt, the Trustee agreed, among other things, to hold the car in question for the Entruster and to re-

turn it on demand in good order and unused. It further agreed that it would not sell the car at less than the stated price and that when sold, the proceeds would be kept separate from the dealer's funds, and on the day of the receipt of the purchase price it would transmit the same to the Entruster.

North American Acceptance Corporation is a financing company, and Emil H. Stassen was its agent and representative and had his office in Woodstock. Prior to December 18, 1948, the Acceptance Corporation had done considerable financing business with the Trustee, McHenry County Motor Sales, Inc., and on that day Ben A. Kausal, Jr., then president of said Trustee, and his brother, the said Richard V. Kausal, then a salesman of the Trustee, came to the office of Stassen and Richard V. Kausal executed a note for $1,926.97, payable to the order of said Acceptance Corporation in eighteen monthly installments, seventeen of $108 each and a final installment of $90.97. At the same time, Richard V. Kausal and the Trustee executed a conditional sales agreement by the terms of which the Trustee agreed to sell and Kausal agreed to purchase the Kaiser automobile involved herein. This contract recited that the price paid was $2,830, with a cash payment of $1,037.43, leaving an unpaid balance of $1,792.57 to which was added a finance charge of $134.40, making a total of $1,926.97. B. A. Kausal, Jr., president of the seller, guaranteed the payment of the note and assigned it and the conditional sales contract to the Acceptance Corporation.

About April 1, 1949, the Trustee became financially involved and, at the request of Ben A. Kausal, Jr., and Richard V. Kausal, their father, Benjamin A. Kausal, Sr., undertook to liquidate the company. At that time the car was on the showroom floor of the Trustee and so remained there until April 9, 1949,

91

when it was delivered to Harold Breen, field man for the Entruster. Thereafter, the bill of sale, trust receipt, and note of November 18, 1948, were cancelled and returned to the Trustee. Breen then sold the car to Thomas Kiley of Kiley Motor Sales, who resold the car on May 10, 1949, to Thomas J. Weithers who financed his purchase of the car with the North American Acceptance Corporation.

On August 23, 1949, the instant complaint was filed in the circuit court of McHenry county by North American Acceptance Corporation which alleged, among other things, that it was the owner of and entitled to the possession of this Kaiser automobile; that without plaintiff's consent, the defendant, Northern Illinois Corporation, on April 9, 1949, seized said automobile and converted the same to its own use. The plaintiff demanded judgment for $2,000. The defendant answered denying plaintiff's ownership of the automobile, denied the conversion, and asserted its own ownership, and alleged that the plaintiff by its conduct in permitting the automobile to remain in the showroom of McHenry Motor Sales, Inc., and by refinancing the automobile on May 10, 1949, and by failing to assert its lien at the time application was made to it for refinancing on May 10, 1949, had waived its right to maintain this action. As an affirmative defense, the defendant alleged that it was in the business of financing automobiles by floor-plan-type financing and that in the course of its business it floor-planned the automobile in question with McHenry County Motor Sales, Inc.; that the automobile was a new car and was floor-planned immediately upon its receipt by the McHenry County Motor Sales, Inc.; that said car was never sold to any bona fide purchaser, was never in the actual possession of anyone after being floor-planned, other than McHenry County Motor Sales, Inc.; that plaintiff has no legal right to said car

that is dominant to defendant's claim, and that said car is the sole property of the defendant. To this affirmative defense the plaintiff replied denying that the automobile was never off of the floor of the McHenry County Motor Sales, Inc., before being taken by the defendant; denied that the car was never sold to a bona fide purchaser; denied that the car was never in the possession of anyone other than McHenry County Motor Sales, Inc., after being floor-planned; denied that plaintiff had no legal right to the car, and denied that the car was the sole property of the defendant. The issues thus made were submitted to the court for determination without a jury resulting in a finding and judgment for defendant, and plaintiff appeals.

It is insisted by counsel for appellant that the evidence discloses that Richard V. Kausal bought this automobile on December 18, 1948, paid the Trustee $1,037.43 and executed a note for the balance of the purchase price and also a conditional sale agreement; that the transaction was a sale in the ordinary course of trade and made in good faith, and that under the provisions of the Uniform Trust Receipts Act, appellant is a bona fide purchaser for value of the note and conditional sale contract and its right to the automobile described in its conditional sale contract is superior to that of appellee.

Counsel for appellee insist that the evidence discloses that Richard V. Kausal had knowledge of appellee's lien at the time he purported to purchase the car; that the car remained in the showroom of the dealer without any visible change of ownership from the time of its purported sale until it was seized by appellee on April 9, 1949, and that Kausal never did have possession of it; that Kausal was not a purchaser in the ordinary course of trade; that Kausal had actual notice of the interest of appellee in the car in question; that it is immaterial whether he did or did not

93

have or whether appellant did or did not have notice of appellee's interest, because both Kausal and appellant were bound to make inquiry at the time of the purported sale to Kausal and the execution by him of the conditional sale contract, under which appellant claims, inasmuch as the "Statement of Trust Receipt Financing" executed by appellee and by McHenry County Motors, Inc., was on file in the office of the Secretary of State as provided by law.

This is a contest between an entruster finance company holding a trust receipt given under the Uniform Trust Receipts Act for an entrusted Kaiser automobile and a finance company holding an assigned conditional sale contract for the balance of the purchase price of the same automobile. Appellee rests its claim to this car upon the provisions of the Uniform Trust Receipts Act (Ill. Rev. St. 1947, chap. 121½, pars. 166–187) [Jones Ill. Stats. Ann. 137.17(1)–135.17(22)]. Section 7 of this Act provides that if the Statement of Trust Receipt Financing is filed with the Secretary of State, as provided by the Act, then such filing shall be effective to preserve the security interest of the Entruster in documents for goods against all persons save as otherwise provided. Section 9, subsec. (1-a) defines the limitations of an entruster's protection against purchasers and provides that nothing in the Act shall limit the rights of purchasers of negotiable instruments from the trustee in good faith and for value, and nothing in the Act shall limit the rights of purchasers taking from the trustee for value in good faith and by transfer in the customary manner, instruments, in such forms as are by common practice purchased and sold as if negotiable and such purchasers shall hold such instruments free of the entruster's interest, and the filing of the Statement of Trust Receipt Financing with the Secretary of State shall not be deemed to constitute notice of the entruster's interest

to purchasers of such instruments in good faith and for value. (Ill. Rev. St. 1947, chap. 121½, par. 174 subpar. 1) [Jones Ill. Stats. Ann. 135.17 (9) subpar. 1].

The question presented for our determination upon this record is whether appellant, on December 18, 1948, acquired the note and conditional sale contract from McHenry Motor Sales, Inc., for value, in good faith, and by transfer in the customary manner. This conditional sale contract recited that the cash price for this Kaiser, four-door sedan was $2,830, that the buyer had paid $1,037.43, leaving an unpaid balance of $1,792.57, and this amount together with the finance charge of $134.40 made the total time balance of $1,926.97. The contract recited that this amount was payable in eighteen consecutive installments, seventeen being for $108 each, commencing January 18, 1949, and a final installment of $90.97, according to the terms of a promissory note of even date executed by the buyer, said note being given not as payment but to evidence the said total time balance. The principal sum of the note was $1,926.97. It was payable to the order of North American Acceptance Corporation its payment was guaranteed by McHenry County Motor Sales, Inc., and bore this endorsement: "For value received, the within contract and note therein described are hereby sold, assigned and transferred to North American Acceptance Corporation, Chicago, Illinois, its successors and assigns. The undersigned represents that this contract was executed in connection with the conditional sale to the within buyer of the described property which has been delivered to and accepted by said buyer on the within conditions; that the undersigned has good title to said contract, note, and property; that the said property is free and clear of all liens; and that the whole of the deferred balance of the purchase price stipulated therein is unpaid; and that there are no claims against same; and that no

agreement or contract, oral or written, except the within contract, was executed or given by the Seller in connection with said conditional sale.''

The evidence discloses that prior to December 18, 1948, appellant had had previous financial transactions with Richard V. Kausal and, also, with McHenry County Motor Sales, Inc. At the time the conditional sale agreement and note were executed on December 18, 1948, under which appellant claims, the books of appellant showed that Richard V. Kausal was entitled to a credit of $13.80 on a previous car financing deal with appellant, and this amount was credited to his account when the transaction involving the Kaiser automobile involved in this proceeding was set up on the books of appellant.

Emil H. Stassen testified that he was the agent of appellant, lived in Woodstock, had his office at 109 Dean street in that city and had had his office there for twenty years, and had represented appellant since January 21, 1943, and was also district manager for the Chicago Motor Club; that the business of appellant was financing automobiles, loaning money on used cars and making repair loans; that he, Stassen, knew McHenry County Motor Sales, Inc., and its officers and knew that it was engaged in selling Kaiser and Frazer automobiles and had previously done some business with McHenry County Motor Sales, Inc., that on December 18, 1948, Ben A. Kausal, Jr., president of McHenry County Motor Sales, Inc., and Richard V. Kausal came to his office in Woodstock and that the occasion of their coming was to finance a new 1949 Kaiser, four-door, green sedan; that they drove to his office in a new 1949 Kaiser, four-door, green sedan automobile; that the conditional sale contract and note were on one of appellant's printed forms and he caused it to be prepared and it was executed by McHenry County Motor Sales, Inc., and by Ben A. Kausal, its president, and by

Richard V. Kausal, as buyer, and he, Stassen, wit-
nessed their signatures; that after the execution of the
documents they were sent to the Chicago office of appel-
lant; that on December 18, 1948, at the time the condi-
tional sale contract and note were executed in his office
he did not know of the trust-receipt agreement between
appellee and McHenry County Motor Sales, Inc.; that
on June 27, 1949, he first learned that appellee had
taken possession of the car, and prior to that time he
had no knowledge that this Kaiser car had been fi-
nanced by appellee on a trust-receipt basis.

On cross-examination, this witness, Emil H. Stassen,
testified that on December 18, 1948, he and Richard V.
Kausal and Ben A. Kausal, Jr., were standing at the
counter in his office when "we made this deal and there
was a green Kaiser sitting in front of the office." He
further testified that he did not go out and examine
the car and did not learn the motor or serial number
of the car by any examination of the car. He made no
explanation of what the "deal" he testified about con-
sisted of except to state that the note, conditional sale
contract and guaranty were signed by the respective
parties and delivered to him. He was not asked, nor
did he testify, whether anything passed from him or
from appellant in exchange for these documents. All
the record shows is that the instruments upon which
appellant seeks to recover were signed and delivered
to appellant. If any consideration passed from appel-
lant to McHenry County Motor Sales, Inc., or to Rich-
ard V. Kausal for these instruments, it is not shown
by this record. Richard V. Kausal testified in this
case, not as a witness for appellant, but for appellee.
He was not asked whether he did or did not pay any-
thing to McHenry County Motor Sales, Inc., for this
car, nor did he testify that he did, and he did not testify
that either he or Ben A. Kausal, Jr., received anything
from Stassen when the documents were executed in

97

Stassen's office on December 18, 1948. Ben A. Kausal, Jr., the only other person present on December 18, 1948, besides Richard V. Kausal and Emil H. Stassen did not testify upon the hearing in the trial court.

The application for the certificate of title for this car was not executed until December 29, 1948. At that time Ben A. Kausal, Jr., on behalf of McHenry County Motor Sales, Inc., as seller, and Richard V. Kausal, as buyer, did execute an application which recited the purchase by Richard V. Kausal on December 18, 1948, of this car for $2,830 with a lien or encumbrance of $1,926.97 in favor of North American Acceptance Corporation of Chicago. Upon this application there was issued to Richard V. Kausal a certificate of title in the usual form by the Secretary of State on January 17, 1949. Richard V. Kausal also, on December 29, 1948, executed his application for a license for this car, and this application recited that he purchased it on December 18, 1948, by conditional sale contract from McHenry County Motor Sales, Inc. This application was filed in the office of the Secretary of State on January 14, 1949, and license No. 638–945 was thereafter issued to Richard V. Kausal, and he testified that they were placed on this car at McHenry County Motor Sales, Inc. It also appears from the record that on March 11, 1949, Richard V. Kausal paid appellant, at its office in Woodstock, $100, and on April 29, 1949, he paid a further sum of $108. These sums were sent by Mr. Stassen to his Chicago office, and the Richard V. Kausal account there was duly credited with these payments.

The trial court found that Richard V. Kausal knew of the interest of appellee in this car at the time he executed the conditional sale contract and promissory note upon which appellant relies, and we fully agree with this finding. If, however, appellant was a purchaser from McHenry County Motor Sales, Inc., of

98

these instruments in good faith and for value, then, it, appellant, took title to this car free from the interest of appellee. Whether appellant was a purchaser in good faith and for value of the conditional sale contract and promissory note was a question of fact. The complaint alleged that appellant was the owner of and entitled to this car at the time appellee took possession of it. Appellant's ownership depended, as against appellee, upon its good faith in acquiring the conditional sale contract and promissory note and the purchasing of these instruments from the Trustee, McHenry County Motor Sales, Inc., for value. It was clearly within the power of appellant to establish those facts, but, in our opinion, the record fails to show that it has met this requirement.

Counsel for appellant cite and call our attention to two New York cases, *Farmers National Bank of Amsterdam v. Universal Credit Company,* 259 App. Div. 955, 20 N. Y. S. (2d), 1004, and *Citizens National Bank of Springville v. Conger,* 176 Misc. 1048. We are unable to find the opinion of the lower court in the *Farmers National Bank of Amsterdam* case, but there is a discussion of the facts and holdings in that case in the opinion by MR. JUSTICE LYTLE in the *Conger* case. From that opinion, it appears that the trustee in the *Amsterdam Bank* case was a corporate automobile retail dealer which obtained an automobile through a trust-receipt financing transaction. The Universal Credit Company was entruster. The president of the corporate retail dealer purportedly sold the automobile to his wife who was an employee of said corporate retail dealer, the trustee. The purported purchaser then executed a note and chattel mortgage to the Farmers National Bank of Amsterdam. The chattel mortgage was duly filed, as provided by law, and the proceeds of the note were credited to the account of the trustee and by it withdrawn and disbursed. The Universal Credit

99

Company never received any part of the proceeds from the transaction or any other payment for the automobile. Subsequently, the entruster took possession of the automobile, and the plaintiff bank, after demand, instituted proceedings against the Credit Company and recovered. The court in the *Conger* case stated that in the *Amsterdam* case the trustee in its proper corporate name executed a bill of sale to the purported vendee and she, in her proper name, executed a chattel mortgage to the plaintiff bank, and then said: (*Citizens National Bank of Springville v. Conger*, 176 Misc. 1048, 29 N. Y. S. (2d) 65 at page 67) "It seems to be the law of this state that a purchaser in good faith for value of a chattel mortgage, regular on its face, and accepted in what appears to be the ordinary course of trade, or the customary manner, takes title free from the entruster's interest, even though the mortgage and the mortgagor's evidence of title were created in a fraudulent scheme. The authority for this proposition is Farmers National Bank of Amsterdam v. Universal Credit Company, Inc., 259 App. Div. 955, 20 N. Y. S., (2d), 1004, reargument and leave to appeal denied 260 App. Div. 816, 22 N. Y. S. 2d, 532, leave to appeal denied 284 N. Y. 818, 29 N. E. 2d 975."

In *Citizens Nat'l Bank of Springville v. Conger,* 176 (N. Y.) Misc. 1048, 29 N. Y. S. (2d) 65, it appeared that on November 17, 1939, Associates Discount Corporation, as entruster, and Carl R. Johnson, Inc., as trustee, filed in the office of the Secretary of State of the State of New York a Statement of Trust-Receipt Financing as provided by the Personal Property Law of that State. On December 12, 1939, Brost Motors, Inc., sold to the entruster a Plymouth passenger automobile, the physical custody of which passed to Carl R. Johnson, Inc., and the automobile was placed in his place of business. A trust receipt was duly executed by Carl R. Johnson, Inc., and delivered to the entruster. On Feb-

ruary 14, 1940, the treasurer of Carl R. Johnson, Inc., and Harry G. Conger went to the Citizens National Bank of Springville and represented that the automobile, which was then at the place of business of Carl R. Johnson, Inc., was to be sold to Conger. A chattel mortgage covering the car was executed by Conger as mortgagor and Carl R. Johnson as mortgagee. A promissory note in the amount of the purchase price of the car was also executed by Conger. This note, payable to the bank, was endorsed by Johnson, and the chattel mortgage and note were delivered to the bank and the bank, in turn, drew its cashier's check for the principal sum of the loan payable to Carl R. Johnson, Inc. The entruster, Associates Discount Corporation, never received any part of the proceeds of this check or any other payment for the automobile. Conger never took possession of the car, but it remained at the place of business of Carl R. Johnson, Inc., until April 5, 1940, when it was taken into possession by Associates Discount Corporation, the entruster. Thereafter the bank sued Conger and the entruster to recover on the note. The court, after setting out the facts, commented upon the Personal Property Law of that State and referred to the facts in the case of *Farmers National Bank of Amsterdam v. Universal Credit Company, Inc.,* 259 App. Div. 955, 20 N. Y. S. (2d) 1004, and then said, p. 68: "If it were not for the difference in the documents involved in the two cases, it would be difficult to distinguish between them. However, in the *Amsterdam* case the trustee in its proper corporate name executed a bill of sale to the purported vendee, and she, in her proper name, executed a chattel mortgage to the bank therein. No such clear picture is presented in the case at bar. The defendant Conger had nothing to show title: neither a document nor the possession of the chattel. Nowhere in the chain of events in the case at bar did the corporate retailer, Carl R. Johnson,

101

Inc., make, deliver or even exhibit any document that would vest any rights in either the plaintiff bank or the defendant Conger.'' The court then held that the lien of the plaintiff bank depended upon its chattel mortgage and that the chattel mortgage was given by Conger who had no title to the automobile and rendered judgment against Conger for the amount of the note executed by him and dismissed the complaint as to the Associates Discount Corporation.

Counsel for appellant insists that the evidence in this record discloses that the transaction here between Richard V. Kausal, McHenry County Motor Sales, Inc., and appellant was regular in every way and that appellant acquired the note and conditional sale contract in good faith and for value and in the regular and ordinary course of trade. Counsel in their argument say: ''The rule of law announced in the Amsterdam case necessarily applies to the case at bar, the legal facts being the same, except this, in the case at bar the buyer of the car obviously acted in entirely good faith as is shown by putting up the down payment on the purchase price, procuring a certificate of title from the Secretary of State, applying for registration and license plates and affixing the plates in their proper places on the car. Whatever fraud there may have been was in the failure of McHenry Motor Sales to account to the defendant entruster for the proceeds of the sale.—It never was intended by the legislature that a purchaser of title papers from a trustee should follow the purchase money into the entruster's hands, nor become responsible for the trustee's fraud.''

The evidence in this record does not show that the transaction of December 18, 1948, was regular in every way and does not show that appellant acquired the conditional sale contract and note for value. In the *Amsterdam* case, upon which appellant relies, the court pointed out that the proceeds of the note involved in

that case were credited to the account of the trustee and by it withdrawn and disbursed. In the instant case, counsel for appellant offered in evidence the conditional sale contract and the attached note and the endorsements appearing thereon, and the documents were admitted in evidence without objection. Emil B. Stassen, appellant's agent, was then called as a witness, and he testified on behalf of appellant that he saw the parties whose names appear upon the conditional sale contract and note execute those instruments. He was not asked anything about the consideration which passed from him as buyer to the trustee or to the maker of the note. All he testified to was that the conditional sale contract and note bear the genuine signatures of the persons whose names appear thereon. On cross-examination, he was asked: "Mr. Stassen, now have you described in detail what you did relative to Exhibit 1, the conditional sales contract, have you?" and he answered: "Yes." The question was asked him again, and he started to relate something that he had said to Richard and Ben Kausal, Jr., when he was interrupted by the court, who said: "Everything except conversation. Everything you did except conversation" and the witness answered: "I don't know anything else outside of conversation."

Counsel for appellant insists that the record shows that Richard V. Kausal paid the trustee as a down payment $1,637.43, and gave the trustee a conditional sale contract for the balance of the purchase price. The conditional sale contract does show that the cash price of this car was $2,830 and that the total down payment was $1,037.43, and the total time balance was $1,926.97, and the attached note was for the principal sum of $1,926.97, but neither Stassen nor Richard V. Kausal made any reference to these amounts in their testimony. We have read the evidence in this record with care and, in our opinion, the trial court was war-

ranted in concluding that appellant was not a purchaser of this note and conditional sale contract for value and in good faith.

Appellee admittedly furnished the money with which this Kaiser automobile was originally purchased, and at that time appellee complied with the provisions of the Uniform Trust Receipts Act. Its transactions with the trustee were bona fide. The car from the time it was driven from Rockford to Woodstock on November 18, 1948, remained in the garage or showroom of McHenry County Motor Sales, Inc., in Woodstock, and it was there inspected approximately every two weeks by a representative of appellee and no license plates were on the car at these times. The judgment of the trial court is sustained by the facts as found in this record and the applicable law and is therefore affirmed.

*Judgment affirmed.*